## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CRAZY CUBAN, LLC d/b/a THE CRAZY CUBAN,

     Plaintiff,

           v.

AmGUARD INSURANCE COMPANY,

     Defendant.

Civil Action No.
1:18-cv-04614-SDG

### ORDER

This matter is before the Court on Defendant's motion for summary judgment [ECF 31]. The action stems from an insurance dispute between Plaintiff (the insured) and Defendant (the insurer). Plaintiff asserts that Defendant acted in bad faith and breached the insurance contract by failing to make prompt insurance benefit payments.[1] Defendant argues that it is entitled to summary judgment because the terms of the insurance policy show that payment is not yet due. For the reasons stated below, the Court **DENIES** Defendant's motion.

### I.   BACKGROUND

Unless otherwise noted, the following facts are not disputed by the parties or are supported by undisputed evidence in the record. Defendant issued a

---

[1]   ECF 1-1.

Businessowner's Insurance Policy, Policy No. CRBP767128 (the "Policy"), to Plaintiff for restaurant business operations located at 290 14th Street, Atlanta, Georgia 30345 (the "Restaurant").[2] The Policy covered the Restaurant from June 1, 2016 to June 1, 2017.[3] The Policy states the following:

> **Property Loss Conditions**
>
> …
>
> **3. Duties In The Event Of Loss Or Damage**
>
> a. You must see that the following are done in the event of loss or damage to Covered Property:[4]
>
> …
>
> > (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.
> >
> > (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
> >
> > (8) Cooperate with us in the investigation or settlement of the claim.
> >
> > …

---

[2]   ECF 31-16, ¶ 1.

[3]   *Id.*

[4]   Capitalized terms not defined herein have the same meaning as in the Policy.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

…

**5. Loss Payment**

In the event of loss or damage covered by this policy:

…

b. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

…

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy; and

> (1) We have reached agreement with you on the amount of loss; or

> (2) An appraisal award has been made.

…

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance of Section I – Property.

**7. Resumption Of Operations**

We will reduce the amount of your:

a. Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in

> part, by using damaged or undamaged property
> (including merchandise or stock) at the described
> premises or elsewhere.
>
> b. Extra Expense loss to the extent you can return
> "operations" to normal and discontinue such Extra
> Expense.[5]

On September 17, 2016, a fire occurred at the Restaurant.[6] The Restaurant was a Covered Property and the fire was a covered event under the Policy.[7]

On September 18, 2016, Plaintiff submitted a timely claim related to the losses it suffered as a result of the fire.[8] From September 2016 through June 2017, the parties exchanged information regarding Plaintiff's losses and Defendant provided payment on some.[9] On February 24, 2017, Plaintiff hired The Norton Group ("Norton") to assist in claim negotiations with Defendant.[10] J.P. Norton was

---

[5]  ECF 31-16, ¶ 2; ECF 31-2.

[6]  ECF 31-16, ¶ 3.

[7]  *Id*. ¶ 4.

[8]  ECF 46, ¶ 8.

[9]  In its reply brief, Defendant argues that the communication between the parties and Defendant's general handling, adjustment, and claim investigation prior to June 29, 2017 are immaterial to its summary judgment motion since the dispute stems from claims made for the first time on that date. ECF 53, at 5. The Court is not convinced by Defendant's argument and notes that Plaintiff has not had an opportunity to fully address it. Regardless, the Court has limited the facts recounted here to interactions that are relevant to the motion for summary judgment.

[10]  ECF 46, ¶ 21; ECF 46-23.

the public adjuster from Norton who worked with Plaintiff.[11] On June 14, 2017, Plaintiff attempted to terminate the contract with Norton.[12] On June 19, 2017, Plaintiff[13] emailed Paul Prislupsky and Nona Loftus, general adjusters for Defendant assigned to Plaintiff's claim,[14] notifying them that Plaintiff had terminated its contract with Norton.[15] After June 19, 2017, Plaintiff repeatedly reminded Defendant that it was no longer represented by Norton.[16] However,

---

[11]   ECF 31-16, ¶ 15.

[12]   ECF 46, ¶ 30; ECF 46-24. The parties dispute whether Plaintiff successfully terminated Norton. The issue was not fully briefed because Defendant claims that it is immaterial for purposes of summary judgment. ECF 53, at 13–14. The Court finds that Norton's status is material to Plaintiff's bad faith cause of action, at the very least, since it bears on the reasonableness of Defendant's actions.

[13]   The Restaurant is owned and operated by Aldo and Janice Ramirez. ECF 1-1, ¶ 10. Both of them exchanged emails with Defendant throughout the investigation of their claim. However, for ease of reference, the Court will refer to the author of those communications as "Plaintiff."

[14]   ECF 31-16, ¶¶ 15, 22.

[15]   ECF 46, ¶ 31; ECF 46-25.

[16]   On June 21, 2017, Plaintiff emailed Defendant stating, "Please understand that JP Norton's contract was terminated for cause." ECF 46-26. On July 11, 2017, Plaintiff acknowledged that Defendant refused to concede that Norton had been fired and, consequently, referred to Norton as a "Hostile Representative" and asked that Plaintiff be copied "on any and all communication to [Norton] concerning our claim." ECF 46-28. On August 7, 2017, in response to Defendant's assertion that Plaintiff should discuss concerns with Norton, Plaintiff referred to Norton as a "Hostile Adjuster," informed Defendant that Norton was not communicating with Plaintiff "on any level," and once again requested that Plaintiff be included on all communications between Defendant

Defendant continued to communicate with Norton, absent Plaintiff's participation, and to rely on Norton's characterizations of Plaintiff's claims.[17]

On June 29, 2017, Plaintiff formally submitted a Business Income and Extra Expense claim for expenses incurred to build, equip, permit, and operate a food cart.[18] In July 2017, at least a couple weeks after having been notified of Norton's termination, Prislupsky discussed Plaintiff's claims with Norton.[19] Based on their conversation, Prislupsky emailed Norton a breakdown of the calculations for the remaining claims and three separate proofs of loss prepared by Defendant, which included: (1) $14,954.96 for Business Personal Property; (2) $13,091.66 for Tenant Improvements and Betterments; and, (3) $26,412.45 related to remaining amounts owed for Business Income and Extra Expenses.[20] Norton agreed that the amounts

---

and Norton. ECF 46-35. On August 9, 2017, Plaintiff again requested that Defendant stop communicating with Norton regarding Plaintiff's claim noting that Norton "no longer represents us." ECF 46-36. Defendant appears to have ignored Plaintiff's continuous reminders and repeated requests for Defendant to stop communicating with Norton or at least to include Plaintiff in those communications. This is clear from Prislupsky's last email communication with Plaintiff on August 25, 2017 stating, "At this point, an offer of settlement was extended to your Public Adjuster. . . . Please communicate through your Public Adjuster how you wish to proceed . . . ." ECF 46-36.

[17]   ECF 31-16, ¶¶ 15–19; ECF 46-30; ECF 46-33; ECF 46-34; ECF 46-36.

[18]   ECF 31-16, ¶ 14.

[19]   *Id*. ¶ 15.

[20]   *Id*. ¶ 16–17.

provided were reasonable.[21] Prislupsky asked Norton to execute the three proofs of loss so that payment could be issued.[22]

On July 21, 2017, Plaintiff emailed Prislupsky regarding Defendant's proposed proofs of loss.[23] Plaintiff identified alleged errors in Defendant's calculations and attached unsigned, informally edited proofs of loss reflecting the amounts owed according to Plaintiff.[24] The additional amounts included the food cart expenses and an $8,000 advance.[25]

On August 5, 2017, Prislupsky sent two emails, one to Norton and one to Plaintiff, stating that Defendant would not accept the informally edited proofs of loss.[26] In Prislupsky's email to Norton, he stated that the original proofs of loss he provided in his July 17, 2017 email could still be used to satisfy the claims, but "any altered document will be rejected."[27] Prislupsky also forwarded information

---

[21] *Id*. ¶ 18. Plaintiff disputes this assertion because it argues Norton was no longer authorized to conduct business on Plaintiff's behalf after Defendant received notice of Norton's termination. ECF 45, ¶ 18.

[22] ECF 31-16, ¶ 17.

[23] *Id*. ¶ 20.

[24] ECF 31-11.

[25] *Id*.

[26] ECF 31-16, ¶ 26; ECF 31-12.

[27] ECF 31-12.

regarding Business Income and Extra Expense claims, including the food cart expenses, to Joe Balkunas, an employee of T.D. Davidson, for additional analysis.[28] T.D. Davidson is an outside consulting firm that Defendant utilized to prepare its Business Income and Extra Expense calculations.[29] On August 7, 2017, Balkunas sent an email to Plaintiff to inform it that Defendant was still in the process of determining whether the food cart was covered under the Policy.[30] Balkunas acknowledged receipt of Plaintiff's June 2017 profit and loss statements for the cart and requested the same for July.[31]

Plaintiff never replied to Balkunas's August 7 email.[32] However, Plaintiff continued to address its food cart expenses with Prislupsky in multiple email chains.[33] On August 25, 2017, Prislupsky replied to an email sent by Plaintiff on August 9, stating:

> At this point, an offer of settlement was extended to your Public Adjuster. The information provided by you in the recent past was reviewed and we find no reason to alter our position. As such, our offer stands. Please

---

[28]   ECF 31-16, ¶ 27.

[29]   *Id*. ¶ 12.

[30]   ECF 31-14.

[31]   *Id*.

[32]   ECF 53-1.

[33]   ECF 46-34; ECF 46-35; ECF 46-36; ECF 46-37; ECF 46-38.

> communicate through your Public Adjuster how you
> wish to proceed and provide the documentation
> requested by Mr. Balkunas.[34]

In response, on August 28, 2017, Plaintiff sent Prislupsky the sworn proof of loss

for the Tenant Betterments and Improvements claim that Prislupsky had

originally provided in his July 17 email and requested an update on Plaintiff's

other claims.[35] Regarding its food cart expenses, Plaintiff asked: "What is the status

on the additional expenses to operate the cart? Do you need any further

information from us which would expedite this portion of the claim?"[36]

On September 8, 2017, Plaintiff followed up on its August 28 email because

Prislupsky had not replied.[37] Once again, Plaintiff inquired regarding the food cart

asking, "What is the status of the cart expenses?"[38] On September 18, 2017 due to

Defendant's continued failure to respond, Plaintiff resent the August 28 and

September 8 emails.[39] Prislupsky did not reply to any of these communications.[40]

---

[34]   ECF 46-36.

[35]   ECF 46, ¶ 55; ECF 46-37.

[36]   ECF 46-37.

[37]   ECF 46-38.

[38]   *Id*.

[39]   ECF 46, ¶ 59.

[40]   ECF 46, ¶¶ 56, 58, 60. Defendant responds that the asserted fact that Prislupsky did not reply to those emails is not supported by any citation and, therefore, is

In December 2017, having not heard from Defendant for months, Plaintiff sent Defendant a demand letter.[41]

Out of the three proofs of loss attached to Prislupsky's July 17, 2017 email, Plaintiff only executed one—for Tenant Betterments and Improvements.[42] Defendant provided payment for that loss on October 26, 2017.[43] As to the other claims, the parties never agreed to the amount of loss.[44]

## II.   LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to

---

not in compliance with Local Rule 56.1(B)(1). ECF 52, ¶¶ 56, 58, 60. However, Defendant does not claim that Prislupsky replied to those emails and it agreed with Plaintiff's assertion that "On September 18, 2017, [Plaintiff] sent [its] August 28, 2017, and September 8, 2017, emails to Mr. Prislupsky." ECF 52, ¶ 59. The Court, therefore, concludes it is undisputed by the record evidence that Prislupsky failed to respond to the August 28 and September 8 emails from Plaintiff.

[41]   ECF 31-16, ¶ 39.

[42]   *Id*. ¶¶ 30–34.

[43]   In Plaintiff's statement of material facts, it states that payment was made on October 26, 2019. ECF 46, ¶ 61. However, Plaintiff also claims that payment was made 58 days after it submitted the proof of loss on August 28, 2017. *Id*. Defendant claims that it is undisputed that the actual date was October 26, 2017. ECF 52, ¶ 61. As Defendant notes, the date could not be October 26, 2019 because Plaintiff filed its statement of material facts prior to that date. *Id*. The Court accepts Defendant's assertion that Plaintiff made a scrivener's error and the actual date of payment was October 26, 2017.

[44]   ECF 31-16, ¶ 34.

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255; *see also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the district court. *Anderson*, 477 U.S. at 255. *See also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment for the moving party is

proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   BREACH OF CONTRACT CLAIM

The parties do not dispute that Georgia law governs this dispute. Accordingly, if the insured fails to provide its insurer any material information that is called for under the Policy, "there is a breach of contract *unless some principle excuses the failure.*" *Hines v. State Farm Fire & Cas. Co.*, 815 F.2d 648, 651–52 (11th Cir. 1987) (emphasis in original) (quoting *Halcome v. Cincinnati Ins. Co.*, 254 Ga. 742 (1985)). The Georgia Court of Appeals has described an insured's duty as follows:

> An insurer is entitled to require its insured to abide by the policy terms [ ] and the insured is required to cooperate with the insurer in investigation and resolution of the claim. A total failure to comply with policy provisions made a prerequisite to suit under the policy may constitute a breach precluding recovery from the insurer as a matter of law. If, however, the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by a jury. Moreover, the insurer's failure to act with diligence and good faith in securing the necessary information also will preclude the grant of summary judgment to the insurer on the issue of the insured's compliance with policy prerequisites.

*Diamonds & Denims, Inc. v. First of Ga. Ins. Co.*, 203 Ga. App. 681, 683 (1992) (citations omitted).

Defendant argues that it is entitled to summary judgment on the breach of contract claim because Plaintiff failed to follow the Policy prerequisites and, therefore, Defendant was not required to make payment. According to Defendant, Plaintiff failed to provide sworn proofs of loss and the requested documentation regarding food cart expenses.[45] For the reasons stated below, the Court finds that Plaintiff has provided sufficient evidence of disputes of material fact as to whether its noncompliance was excusable and whether Defendant acted with diligence and in good faith in securing the necessary information. As such, the Court denies Defendant's motion for summary judgment on the breach of contract claim.

### a.    Failure to Provide Proofs of Loss

Defendant's agent provided three sworn proofs of loss to Plaintiff on July 17, 2017.[46] On July 21, 2017, Plaintiff sent Defendant edited proofs of loss that included additional amounts Plaintiff believed were covered by the Policy.[47] Defendant rejected the edited proofs of loss on August 5, 2017.[48] In so doing, Defendant noted that "any altered document will be rejected."[49] Thus, because

---

[45]   ECF 31-1, at 16, 20.

[46]   ECF 31-16, ¶¶ 16-17; ECF 31-11.

[47]   ECF 31-16, ¶ 25; ECF 31-11.

[48]   ECF 31-12.

[49]   *Id*.

Plaintiff did not agree with the total amounts provided in the proofs of loss prepared by Defendant and Defendant would not accept edited documents, Plaintiff's only choice was to continue to work with Defendant to come to a resolution regarding the correct loss amount. The undisputed record evidence demonstrates that Plaintiff tried to communicate with Prislupsky and sent multiple emails asking about the status of its claim and whether Defendant needed any additional information. In contrast to Plaintiff's continuous attempts to engage Defendant, Defendant ceased all communications with Plaintiff after Prislupsky's August 28, 2017 email.

Plaintiff has shown a genuine issue of material fact as to whether its failure to provide the proofs of loss is excusable. The facts demonstrate that Plaintiff actively engaged and cooperated with Defendant to reach an agreement regarding the total amount of various categories of losses. Defendant rejected Plaintiff's informally edited proofs of loss and ceased communications with Plaintiff before the parties reached an agreement. This set of facts stands in stark contrast to the cases Defendant cites, where summary judgment was granted in favor of insurers when insureds failed to provide proof of loss. *See Cagle v. State Farm Fire & Cas. Co.*, 236 Ga. App. 726, 727 (1999) (insurer provided insured with personal property inventory forms for insured to complete and contacted insured about forms

multiple times to no avail); *Buffalo Ins. Co. v. Star Photo Finishing Co.*, 120 Ga. App. 697, 701–03 (1969) (insured did not provide notice of loss until insured's demand for payment, which was made three days prior to filing suit and six days prior to expiration of the 12-month policy limitation for bringing suit). Here, the facts suggest that Defendant, not Plaintiff, prevented the claim from moving forward. Therefore, a jury must decide whether Plaintiff is excused from failing to provide the proofs of loss for Business Personal Property and Business Income/Extra Expenses. *Fremichael v. Doe*, 221 Ga. App. 698, 701 (1996) (holding that "whether there was justification for [insured's] failure to submit a sworn statement [is an] issue[ ] for determination by a jury").

Relatedly, there is an issue of material fact as to whether Defendant's actions might have waived the proof-of-loss requirement. In *Napp v. American Casualty Company of Reading, Pennsylvania*, under similar facts, the Georgia Court of Appeals found that the insurer's lack of response to the insured's requests for proof of loss "and to other queries as to whether any further information was desired" could amount to a refusal to provide the forms. 110 Ga. App. 673, 674–75 (1964). The court stated:

> An implied waiver of proof of loss may result from silence and nonaction when the plaintiff requests but does not receive proof of loss forms, leading him to

> believe that nothing further is required, or when there is a course of conduct inconsistent with the position that the insurer is insisting on proof of loss in strict accordance with the policy provisions. The plaintiff here alleges that on several occasions, and particularly on December 21, 1963, he requested proof of loss forms and that the adjuster refused to provide them; the refusal, based on other allegations of the petition, was not explicit but resulted from the lack of response to this request and to other queries as to whether any further information was desired. Silence under these circumstances may amount to waiver. If it is a waiver of proof of loss, then it is also a waiver of the policy provision relating to proof of loss, and carries with it the stipulation above quoted that the company has 60 days from the filing of such forms within which to pay.

*Napp*, 110 Ga. App. at 674–75; *see also Hufstetler v. Int'l Indem. Co.*, 183 Ga. App. 606, 609 (1987) ("[W]e note that under certain circumstances, an implied waiver may result from an insurer's silence and nonaction, especially where an insured's request on a matter is ignored by the insurer leading the insured to believe nothing further is required."). The parties dispute whether Defendant was required to provide the proofs of loss or Plaintiff could prepare and submit its own. Defendant's statement of material facts asserts that "[t]he insured can prepare and

submit its own sworn proof of loss."[50] Plaintiff "disputes that [Defendant] would accept a proof of loss form that it did not prepare."[51]

The Court concludes that there exists a material dispute of fact as to whether Defendant would have accepted a proof of loss prepared by Plaintiff. The evidence Defendant cites shows that, while an insured could prepare and submit its own proof of loss, such a proof of loss would likely be rejected as were the edited proofs of loss submitted by Plaintiff here.[52] Additionally, as Plaintiff notes, the Policy states that Defendant "will supply [insured] with the necessary forms."[53] Thus, there is a genuine factual dispute as to whether Defendant was required to provide the forms for Plaintiff to execute. Further, regardless of Defendant's actual policies, Plaintiff might reasonably have believed that Defendant had to provide the form given the explicit language in Prislupsky's August 5, 2017 email that altered proofs of loss would be rejected.[54] It is up to a jury to decide whether Defendant was required to provide the proofs of loss. If a jury answers that question in the

---

[50]   ECF 31-16, ¶ 36.

[51]   ECF 45, ¶ 36.

[52]   ECF 31-9, at 264 ln. 9–24.

[53]   ECF 44, at 17; ECF 31-2, § E(3)(a)(7).

[54]   ECF 31-12.

affirmative, it would then have to decide whether Defendant's inaction and silence waived the Policy provision requiring such forms. *Napp*, 110 Ga. App. at 675.

**b.    Failure to Provide Food Cart Document**

Plaintiff has also shown a dispute of material fact as to whether it should be excused for failing to provide the July profit and loss statement for the food cart. While Plaintiff did not reply to Balkunas's request for the July 2017 data, it continued to exchange emails with Prislupsky specifically discussing the food cart expenses and asking whether Plaintiff needed to provide anything else to resolve that claim. On August 28, Plaintiff asked, "What is the status on the additional expenses to operate the cart? Do you need any further information from us which would expedite this portion of the claim?"[55] On September 8, Plaintiff asked "What is the status of the cart expenses?"[56] There is no record evidence that Defendant ever replied to those emails.

If an insured "cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by a jury." *Diamonds & Denim*, 203 Ga. App. at 683. Plaintiff's communications with Defendant and its multiple attempts to discuss the food cart expenses after Balkunas's August 7, 2017

---

[55]   ECF 46-37.

[56]   ECF 46-38.

email show a clear intent to cooperate with Defendant's requests. This is highlighted by the fact that Defendant can only point to one profit and loss statement that was not provided upon request. Thus, Plaintiff has raised a genuine factual dispute as to whether its failure to provide the requested documents should be excused.

These facts are easily distinguishable from the cases Defendant cites where an insured explicitly refused to provide documents after multiple requests from its insurer. *See Chamblee Liquor, LLC v. Selective Ins. Co. of the Se.*, No. 1:17-cv-2515-TWT, 2018 WL 1993574, at *3 (N.D. Ga. Apr. 26, 2018) (noting that "[t]he [insured] received multiple requests from the [insurer], over a period of several months"); *JC & C Inc. v. Peerless Indem. Ins. Co.*, No. 1:11-CV-3591-TWT, 2013 WL 1346021, at *4 (N.D. Ga. Apr. 3, 2013), aff'd, 548 F. App'x 604 (11th Cir. 2013) (noting that "[insurer] provided the insured with a list of specific documents requested and reiterated its request after the documents were not provided to it"). Here, Defendant did not repeatedly ask for the July profit and loss statement and Plaintiff did not explicitly refuse to provide it.[57] The fact that Plaintiff had already

---

[57] The only other time in the record that Defendant alludes to the missing statement is in Prislupsky's August 25 email, which states, "Please communicate with your Public Adjuster how you wish to proceed and provide the documentation requested by Mr. Balkunas." ECF 46-36, at 2. However,

provided the June statement presents a question of fact about why it did not provide the July statement. Further, Plaintiff repeatedly asked about the status of its Business Income and Extra Expense claim and whether Defendant needed additional information for that claim. Plaintiff's failure to provide requested information and Defendant's lack of communication with Plaintiff raise questions of fact "concerning [Plaintiff's] compliance with the policy prerequisites and [Defendant's] diligence in obtaining the needed information." *Diamonds & Denims*, 203 Ga. App. at 683 (citing *Hines*, 815 F.2d 648). Accordingly, the Court denies Defendant's motion for summary judgment on the breach of contract claim.

## IV.  BAD FAITH CLAIM

Under Georgia law, O.C.G.A. § 33-4-6 is the exclusive remedy for an insurer's bad faith refusal to pay a claim. *Howell v. S. Heritage Ins. Co.*, 214 Ga. App. 536, 536 (1994) (citing *McCall v. Allstate Ins. Co.*, 251 Ga. 869 (1984)). Under the statute, an insured can make a claim for bad faith penalties and attorney's fees if the insurer refuses to pay a covered loss "within 60 days after a demand has been made by the holder of the policy" and the refusal was made in bad faith. O.C.G.A. § 33-4-6(a). "Bad faith for purposes of O.C.G.A. § 33-4-6 is any frivolous and

_____

Prislupsky did not reply to Plaintiff's August 28 and September 8, 2017 emails asking about the status of the claim. ECF 46-37; ECF 46-38.

unfounded refusal in law or in fact to pay according to the terms of the policy." *King v. Atlanta Cas. Ins. Co.*, 279 Ga. App. 554, 556 (2006). The question of good or bad faith is usually reserved for the jury, "but when there is no evidence of unfounded reason for the nonpayment, or if the issue of liability is close, the court should disallow imposition of bad faith penalties. Good faith is determined by the reasonableness of nonpayment of a claim." *Fla. Int'l Indem. Co. v. Osgood*, 233 Ga. App. 111, 115 (1998).

Defendant is not entitled to summary judgment on Plaintiff's bad faith claim because genuine issues of material fact remain regarding the reasonableness of Defendant's denial of payment. As discussed above, Plaintiff has successfully raised the issue of whether Defendant waived the proof of loss prerequisite due to its silence. If the jury finds that the requirement was waived, Plaintiff's demand for payment triggered the 60-day clock under the Georgia bad faith statute. Defendant's argument that its non-payment was reasonable is just that—an argument that must be resolved by the jury. *Napp*, 110 Ga. App. at 675–76 ("Whether or not it was a good demand depends on whether it was made at a time when immediate payment could be exacted, and this depends on whether or not the defendant had lost the benefit of its 60 days contracted for under the policy

after the reception of proof of loss forms, which in turn depends on whether the filing (not merely the time of filing) of such forms was waived.").

Plaintiff has proffered sufficient evidence of Defendant's bad faith to withstand summary judgment. For example, in denying payment, Defendant relies on the argument that Plaintiff was unwilling to relinquish its food cart "as salvage in exchange for payment."[58] However, Norton, not Plaintiff, gave Defendant this information—at least a month after Plaintiff notified Defendant of Norton's termination.[59] Defendant's continued reliance on and dealings with Norton after receiving notice of its termination are inexplicable. The Court is not persuaded by Defendant's claim that those communications are "immaterial."[60] In fact, it was Prislupsky's conversations with Norton, at least a month after Plaintiff informed Prislupsky of Norton's termination, that led to the allegedly incorrect proofs of loss being offered to Plaintiff in the first place.[61] Furthermore, Defendant has provided no explanation for why it ceased responding to Plaintiff's emails.

---

[58]   ECF 31-1, at 24.

[59]   ECF 31-16, ¶ 19. Plaintiff disputes that it ever told Norton it was unwilling to exchange the food cart and, to the extent that such a statement was made after June 14, 2017, it notes that Defendant already had notice of Norton's termination. ECF 45, ¶ 19.

[60]   ECF 53, at 14.

[61]   ECF 31-16, ¶ 18.

Given these factual disputes, the Court finds that the question of Defendant's alleged bad faith must be decided by a jury. *Chavez v. Encompass Ins. Co.*, No. 1:08-CV-2965-TCB, 2010 WL 11468409, at *4 (N.D. Ga. Jan. 13, 2010) ("[I]t is well settled that the question of an insurer's bad faith is ordinarily for the jury."). Accordingly, the Court denies Defendant's motion for summary judgment with respect to Plaintiff's bad faith cause of action.

## V.   CONCLUSION

For the reasons outlined above, the Court **DENIES** Defendant's motion for summary judgment [ECF 31]. The parties are hereby **DIRECTED** to file their Proposed Consolidated Pretrial Order within 30 days after entry of this Order.

**SO ORDERED** this the 4th day of February 2020.

_____
Steven D. Grimberg
United States District Court Judge